# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re<br><br>FIVE RIVERS ELECTRONIC INNOVATIONS, LLC;<br>CREATIVE MOLDINGS, LLC; and<br>DISTRIBUTION SERVICES, LLC,<br><br>　　　　　　　　　　　　　　　　Debtors. | No. 04-23616<br>No. 04-23617<br>No. 04-23618<br><br>Jointly Administered |
| FIVE RIVERS ELECTRONIC INNOVATIONS, LLC,<br><br>　　Plaintiff,<br><br>vs.<br><br>JC PROPERTY CO., LLC; MORRIS W. KIZER;<br>and GENTRY, TIPTON & McLEMORE, P.C.,<br><br>　　Defendants. | Adv Pro. 04-2056 |

## MEMORANDUM

APPEARANCES:

> MARK S. DESSAUER, ESQ.
> HUNTER SMITH & DAVIS LLP
> Post Office Box 3740
> Kingsport, Tennessee 37664-0704
> *Attorney for Five Rivers Electronic Innovations, LLC*
>
> MAURICE K. GUINN, ESQ.
> TYLER C. HUSKEY, ESQ.
> GENTRY, TIPTON & McLEMORE, ESQ.
> Post Office Box 1990
> Knoxville, Tennessee 37901
> *Attorneys for JC Property Co., LLC, W. Morris W. Kizer and*
> 　*Gentry, Tipton & McLemore, P.C.*

MARCIA PHILLIPS PARSONS
UNITED STATES BANKRUPTCY JUDGE

In this adversary proceeding, the debtor seeks avoidance of JC Property's security interest in a certificate of deposit pursuant to 11 U.S.C. § 544(a) and turnover of the certificate as property of the estate pursuant to 11 U.S.C. § 542(a). Consolidated with this proceeding is JC Property's motion for relief from the automatic stay in order to enforce its security interest in the certificate. Presently before the court are the parties' cross- motions for summary judgment. Because the court concludes that certificate of deposit was an "instrument" rather than a "deposit account" and thus properly perfected by possession, the defendants' summary judgment motion will be granted and the debtor's denied. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(E), (G) and (K).

I.

The debtor Five Rivers Electronic Innovations, LLC ("Five Rivers") filed for bankruptcy relief under chapter 11 on October 25, 2004, and is currently operating as a debtor-in-possession. Prior to the bankruptcy filing, on January 1, 2002, Five Rivers, as lessee, and JC Property Co., LLC, as lessor, entered into a lease agreement ("Lease") for the lease of certain real property located at 403 East Old Andrew Johnson Highway, Jefferson City, Tennessee. The Lease required Five Rivers to obtain, and granted JC Property a security interest in, a $150,000 certificate of deposit to secure performance of Five Rivers' obligations under the Lease. In conjunction with the Lease, the parties also executed an Agreement and Appointment dated January 1, 2002, which indicated that Five Rivers had obtained the required $150,000 certificate of deposit from Greene County Bank, that the certificate was being delivered to JC Property in order to perfect JC Property's security interest therein, and that Morris Kizer, or such other member of the law firm, Gentry, Tipton, Kizer and McLemore, as may be designated by JC Property, was Five Rivers' attorney-in-fact to exercise the

powers conferred upon JC Property with regard to the certificate of deposit. In accordance with these agreements, the certificate of deposit was delivered to Kizer and continues to be retained in the law firm's files.

Upon Five Rivers' bankruptcy filing, JC Property moved for relief from the automatic stay in order to enforce its security interest in the certificate of deposit, alleging a default by Five Rivers under the Lease. Five Rivers responded to the motion by filing a complaint on November 23, 2004, commencing the instant adversary proceeding against JC Property, Kizer, and the law firm of Gentry, Tipton & McLemore. Five Rivers admits a default under the Lease but alleges that JC Property failed to properly perfect its security interest in the certificate of deposit, and therefore, the security interest is subject to avoidance under 11 U.S.C. § 544(a) and turnover as property of the estate. According to Five Rivers, the certificate of deposit constitutes a "deposit account" as defined in Tenn. Code Ann. § 47-9-102(a)(29), which must be perfected by control of the collateral. *See Tenn. Code Ann.* § 47-9-314(a).[1] In response, the defendants assert that the certificate of deposit is an instrument as defined by Tenn. Code Ann. § 47-9-102(a)(47), which may be perfected by possession. *See Tenn. Code Ann.* § 47-9-313(a). They request that the court determine that JC Property's interest is properly perfected and grant relief from the automatic stay.

---

[1] A security interest in a deposit account "may be perfected by control of the collateral under § 47-9-104, § 47-9-105, § 47-9-106, or § 47-9-107." *Tenn. Code Ann.* § 47-9-314(a).

> A secured party has control of a deposit account if: (1) the secured party is the bank with which the deposit account is maintained; (2) the debtor, secured party, and bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor; or (3) the secured party becomes the bank's customer with respect to the deposit account.

*Tenn. Code Ann.* § 47-9-104(a).

By order December 10, 2004, this adversary proceeding and JC Property's motion for relief were consolidated for trial. The parties' cross-motions for summary judgment were filed March 31, 2005, supported by various documents, including affidavits of certain expert witnesses. Five Rivers has moved to strike the affidavits of the defendants' expert witnesses, and responses in opposition to each motion for summary judgment have been filed. The sole issue raised in the summary judgment motions is whether the certificate of deposit is a deposit account, as alleged by Five Rivers, or an instrument, as urged by the defendants. If the certificate is an instrument, there appears to be no dispute that JC Property properly perfected the certificate of deposit by possession, that the certificate is not subject to avoidance and turnover, and that JC Property is entitled to relief from the automatic stay.

II.

Fed. R. Civ. P. 56, as incorporated by Fed. R. Bankr. P. 7056, mandates the entry of summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2520-11 (1986)). "A genuine issue for trial exists only when there is sufficient 'evidence on which the [court] could reasonably find for the plaintiff.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252).

The moving party bears the initial burden of showing that there is an absence of evidence to

support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). The burden then shifts to the nonmoving party to produce evidence that would support a finding in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250-52. In considering the motion, the court must construe all reasonable inferences in favor of the nonmoving party. *Spradlin v. Jarvis (In re Tri-City Turf Club, Inc.)*, 323 F.3d 439, 442 (6th Cir. 2003). The party opposing a motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial. The party opposing the motion must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* at 442-43 (citations omitted). "If after reviewing the record as a whole a rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F. 3d 344, 349 (6th Cir. 1998)).

III.

The terms "deposit account" and "instrument" are defined in Tenn. Code Ann. § 47-9-102(a). "Deposit account" is "a demand, time, savings, passbook, or similar account maintained with a bank. The term does not include investment property or accounts evidenced by an instrument." *Tenn. Code Ann.* § 47-9-102(a)(29). On the other hand,

> "Instrument" means a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment. The term does not include (i) investment property, (ii) letters of credit, or (iii) writings that evidence a right to payment arising out of the use of a credit or charge card or information contained on or for use with the card.

5

*Tenn. Code Ann.* § 47-9-102(a)(47).

Because "deposit account" by definition excludes "accounts evidenced by an instrument," it is clear that the two terms are mutually exclusive, an observation confirmed by the official comments to the statute. *See Tenn. Code Ann.* § 47-9-102(a), cmt. 12 ("Deposit accounts evidenced by Article 9 'instruments' are excluded from the term 'deposit account.'"). The term "certificate of deposit" is not referenced in either definition, but it is addressed in the official comments to the statute:

> Deposit accounts evidenced by Article 9 "instruments" are excluded from the term "deposit account." In contrast, former Section 9-105 excluded from the former definition "an account evidenced by a certificate of deposit." The revised definition clarifies the proper treatment of nonnegotiable or uncertificated certificates of deposit. Under the definition, an uncertificated certificate of deposit would be a deposit account (assuming there is no writing evidencing the bank's obligation to pay) whereas a nonnegotiable certificate of deposit would be a deposit account only if it is not an "instrument" as defined in this section (a question that turns on whether the nonnegotiable certificate of deposit is "of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment.")

*Tenn. Code Ann.* § 47-9-102(a), cmt. 12. *See also Tenn. Code Ann.* § 47-9-104, cmt. 3 ("Perfection by control is not available for bank accounts evidenced by an instrument (e.g., certain certificates of deposit), which by definition are 'instruments' and not 'deposit accounts.'" See § 9-102 (defining 'deposit account' and 'instrument').").

The parties in this proceeding agree that the certificate of deposit in question is not a negotiable instrument and that whether it is an "instrument" turns on whether it "is of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment."[2]

---

[2] In actuality, the definition of "instrument" in Tenn. Code Ann. § 47-9-102(a)(47) imposes the additional requirements that a non-negotiable instrument must also "evidence[] a right to payment of a monetary obligation" and not be "itself a security agreement or lease." The defendants assert that this criteria is established by a "cursory review" of the certificate of deposit, a contention Five Rivers does not dispute.

6

Five Rivers asserts that the certificate of deposit in this case does not fall within this definition because the face of the certificate states that it is a "Time Deposit" and that it is "Not Negotiable - Not Transferable." In support of this proposition, Five Rivers cites the case of *In re Cambridge Biotech Corp.*, 178 B.R. 34 (Bankr. D. Mass. 1995), wherein the court, because of similar non-negotiable, non-transferable language, held that a certificate of deposit was not "of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment" and thus, not an "instrument." *Id.* at 38.

As further evidence that the certificate of deposit in question is not an instrument, Five Rivers cites statements set forth on the second page of the certificate. The paragraph entitled "PRIMARY AGREEMENT" includes the statements: "You may not transfer this account without first obtaining our written consent. You must present this certificate when you request a withdrawal or transfer." The paragraph entitled "WITHDRAWALS AND TRANSFERS" provides: "Only those of you who sign the permanent signature card may withdraw funds from this account." According to Five Rivers,

> this record does not contain any evidence that Five Rivers or JC Property presented the Certificate of Deposit to Greene County Bank when it was pledged by Five Rivers or otherwise assigned or transferred ownership to JC Property, other than purporting to grant a security interest therein . . . [and] [t]here is also no evidence in this record that JC Property was a party to the signature card giving it the right to withdraw the funds from the deposit account, nor is there evidence of an agreement that would allow JC Property to draw under the account under specific circumstances.

Five Rivers maintains that the lack of evidence in these areas indicates that the parties treated the certificate of deposit as a deposit account.

The defendants argue in their motion for summary judgment that the certificate of deposit is an instrument as defined by Tenn. Code Ann. § 47-9-102(a)(47), both as a matter of law and as a matter of fact. With respect to the former, the defendants note that although there are no Tennessee

cases on point, the majority of cases from other jurisdictions have held that non-negotiable/non-transferable certificates of deposit are instruments, citing, *inter alia, McFarland v. Brier*, 850 A.2d 965 (R.I. 2004). Like Five Rivers, the defendants also reference page two of the certificate of deposit and note that notwithstanding the words "Not-Transferable" on the face of the certificate, the statements on the second page evidence that the certificate may be transferred if Greene County Bank's consent is obtained. In this regard, the defendants submit the deposition of Allen R. Jones, Senior Vice President of Greene County Bank, in which he states that Greene County Bank consented to Five Rivers' pledge of the certificate of deposit to JC Property and waived its right of set-off. With regard to the defendants' assertion that the certificate of deposit in question is an instrument as a matter of fact, the defendants have submitted the affidavits of five witnesses, who state that it is common commercial practice to transfer a certificate of deposit, such as this one, in the ordinary course of business by delivery of the original, along with an assignment, and that in their opinion the certificate of deposit in this case is an instrument.

IV.

As the parties have noted, no Tennessee courts have construed the definition of "instrument" set forth in Tenn. Code Ann. § 47-9-102(a)(47), particularly, a "writing that . . . is of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment." Fortunately, the statute, and the very issue at question herein, have been addressed by courts in other jurisdictions, construing this same UCC Article 9 provision. Plainly, the statute contemplates a fact-based analysis, as most courts have recognized. *See In re Omega Envtl. Inc.*, 219 F.3d 984, 986 n.4 (9th Cir. 2000) (Whether the certificate of deposit is an instrument is a question of law, but whether

it is "of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment," is a question of fact); *Craft Prods., Inc. v. Hartford Fire Ins. Co.*, 670 N.E.2d 959, 961 (Ind. Ct. App. 1996) ("If the evidence shows that the type of writing at issue is customarily transferred in the marketplace by delivery of possession, then the requirements of Article 9 are met."); *Drabkin v. Capital Bank, N.A. (In re Latin Inv. Corp.)*, 156 B.R. 102, 109 (Bankr. D.C. 1993) ("[T]here is insufficient evidence in the record to conclude as a matter of indisputable fact that the instant CD is customarily transferred by delivery in the ordinary course of business."). As such, this court rejects those decisions which have concluded as a matter of law that a certificate of deposit is "of a type . . . ." *See, e.g., McFarland*, 850 A.2d at 977.

Similarly, this court rejects those rulings which rely solely on non-transferable language on the face of the document to conclude that the certificate is not an instrument, as argued by Five Rivers herein. *See, e.g., In re Cambridge Biotech Corp.*, 178 B.R. at 38-39. To hold that the certificate of deposit is non-transferable on this basis alone would sidestep the question of whether the writing is of a type that in the ordinary course of business is transferred by delivery etc., notwithstanding the restrictive language. As stated by the court in *Latin Investment*:

> This court believes that the test for transferability should be whether a particular type of writing customarily is transferred by delivery in the ordinary course of business. There is no basis in [UCC § 9-102(a)(47)] for allowing the legend on a writing to control its transferability. Instead, that section requires that actual business practices be consulted.
>
> Moreover, if the business world regularly transfers writings bearing the legend "non-transferable," the court should give that practice legal effect unless doing so is inconsistent with the UCC. The UCC is not intended to thwart usual business practices but to effectuate them. Thus, the realities of business practice should control whether a particular writing meets the standard for transferability found in [UCC § 9-102(a)(47)]. This is the approach advocated by the better reasoned authority.

*In re Latin Investment Corp.*, 156 B.R. at 106-07 (internal citations omitted). *See also In re Omega Envtl. Inc.*, 219 F.3d at 987 ("Almost every court to face the issue has rejected the argument that the language on the certificate is controlling . . . . Rather than 'narrowly looking to the form of the writing, a court should instead look to the realities of the marketplace.'"); Evan H. Krinick, *Most Courts Classify Nonnegotiable Certificate Of Deposit That Also State They Are Nontransferable As "Instruments"; Thus, Lenders May Perfect Their Liens On Such Collateral By Possession*, 117 *Banking L.J.* 347, 351 (July/August 2000) ("These cases [relying solely on non-transferable legend] should (and do) carry little weight because ignoring actual commercial practice in interpreting the UCC is contrary to the UCC's policy of effectuating existing business practices.").

Furthermore, the certificate of deposit in this case contains contradictory language regarding its transferability. Despite the statement on the face of the certificate that it is not-negotiable and not-transferable, page two sets forth additional terms regarding transfers and pledges:

> **TRANSFER:** "Transfer" means any change in ownership, withdrawal rights, or survivorship rights, including (but not limited to) any pledge or assignment of this account as collateral. You cannot transfer this account without our written consent.
>
> . . . .
>
> **PLEDGES:** Any pledge of this account (to which we have agreed), must first be satisfied before the rights of any joint account survivor . . . .

This language plainly contemplates that the certificate may be transferred or pledged, provided Greene County Bank's consent has been obtained. And, the parties' actions in connection with the certificate indicate that this was their intention. It is undisputed that Five Rivers granted JC Property a security interest in the certificate of deposit. In a letter dated August 19, 2002, from Greene County Bank officer Allen Jones to Paul Holbert, chief manager of JC Property, which letter is

attached as an exhibit to Mr. Jones's deposition transcript, Mr. Jones states that it is his understanding that the $150,000 certificate of deposit issued to Five Rivers had been pledged and that Greene County Bank was waiving its set-off rights against the certificate. Similarly, in his deposition testimony, Mr. Jones testified that Greene County Bank had consented to Five Rivers' pledge of the certificate to JC Property. Five Rivers has presented no evidence which contradicts or disputes these facts.

Turning then to the factual question at the heart of this dispute, whether the certificate of deposit is "of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment," the defendants proffer affidavits from five expert witnesses. Five Rivers has filed a motion to strike these affidavits, or alternatively to exclude portions to the extent they contain legal conclusions. Five Rivers is correct that "[e]xpert testimony on the law is excluded because the trial judge does not need the judgment of witnesses." *United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984) ("It is the function of the trial judge to determine the law of the case. It is impermissible to delegate that function to a jury through the submission of testimony on controlling legal principles."). Thus, to the extent the affidavits contain testimony on the legal issue of whether the certificate of deposit is an instrument, the offending testimony will be excluded. However, to the extent the affidavits address the factual issue of whether the certificate of deposit is "of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment," they may be considered. Rule 704 of the Federal Rules of Evidence provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because

it embraces an ultimate issue to be decided by the trier of fact." *See also* Fed. R. Evid. 702.[3]

For the most part, the affidavits of Robert P. Reynolds and Alfred C. Sinclair submitted by the defendants state legal conclusions and therefore, are not helpful in understanding the factual issue presented. On the other hand, the affidavits of Rufus B. King, Phil Gardial, and Douglas W. Johnson are instructive. Mr. King, the principal of Credit Risk Management Consulting with 31 years of experience in banking and commercial lending, states in his affidavit that he is familiar with the lending practices of banks in Tennessee, "including loans secured by non-negotiable and non-transferable certificates of deposit issued by other banks." Mr. King submits that in his experience, when a loan is secured by a non-negotiable, non-transferable certificate of deposit, it is the "customary and ordinary business practice of the bank that the original certificate of deposit is delivered to the lender, with an assignment." He further states that "it is common commercial practice to transfer certificates of deposit such as the one in question by delivery and an assignment."

Phil Gardial, a member in a Tennessee management consulting firm providing problem loan assessments to banks and who for the past 16 years has been involved in commercial banking, states in his affidavit that in his experience as a banker he accepted certificates of deposit as collateral on many occasions and in most cases they were marked non-negotiable and non-transferable. He adds that it was "always his practice" to obtain physical possession, reference it in the governing

---

[3]This rule provides as follows:
"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."
Fed. R. Evid. 702.

12

documents of the loan, and obtain a waiver of set-off from the issuing bank.

Douglas W. Johnson, a certified public accountant since 1992 and certified bank auditor since 1986 who has audited 20 banks in Tennessee, states in his affidavit that he is familiar with the lending practices of banks in Tennessee. He also states:

> [T]he usual and customary practice was and continues to be that the lending bank takes possession of the original certificate of deposit, and the owner executes an assignment of the certificate of deposit to the lender. This is true whether the certificate of deposit is negotiable or non-negotiable, and/or transferable or non-transferable.

Five Rivers offers no evidence which disputes or contradicts these statements. Instead, it argues that these affidavit testimonies are irrelevant because they are not specific to securing leases of commercial real estate. The court rejects this standard as unnecessarily restrictive. The commercial lending practices of banks using non-negotiable, non-transferable certificates of deposit as collateral are relevant to this transaction. Clearly, the affidavits indicate that the certificate of deposit in this case is the type which in the ordinary course of business is transferred by delivery with an indorsement or assignment.

This conclusion is confirmed by the significance the parties and Greene County Bank attached to the certificate and its physical possession. The Lease required Five Rivers to deliver possession of the certificate of deposit to JC Property; the Agreement and Appointment indicated that Five Rivers had delivered possession of the certificate to JC Property; and Allen Jones stated in his deposition that the original certificate must be presented before Greene County Bank will cash it. Actual transfer of possession has been relied upon by other courts as evidence that a certificate of deposit is "of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment." *See In re Omega Envtl. Inc.*, 219 F.3d at 987; *Craft Prods., Inc.*, 670

N.E.2d at 961.

Five Rivers argues that the transfer of possession of the certificate of deposit is irrelevant because Tenn. Code Ann. § 47-9-102(a)(47) requires an absolute assignment and there is no evidence indicating that Five Rivers transferred ownership of the certificate to JC Property. There is no merit to this argument. The official comments to Tenn. Code Ann. § 47-9-102(a)(47) indicate that the word "assignment" as used in the statute includes a transfer of a security interest.

> **Terminology: "Assignment" and "Transfer."** In numerous provisions, this Article refers to the "assignment" or the "transfer" of property interests. These terms and their derivatives are not defined. This Article generally follows common usage by using the terms "assignment" and "assign" to refer to transfers of rights to payment, claims, and liens and other security interests. It generally uses the term "transfer" to refer to other transfers of interests in property. Except when used in connection with a letter-of-credit transaction (see Section 9-107, Comment 4), no significance should be placed on the use of one term or the other. Depending on the context, each term may refer to the assignment or transfer of an outright ownership interest or to the assignment or transfer of a limited interest, such as a security interest.

*Tenn. Code Ann.* § 47-9-102, cmt. 26. Because Five Rivers granted JC Property a security interest in the certificate of deposit, and delivered possession in furtherance of that grant, it was "transferred by delivery with any necessary indorsement or assignment" as contemplated by Tenn. Code. Ann. § 47-9-102(a)(47).

The evidence presented by the defendants, and entirely uncontroverted by Five Rivers, establishes that the certificate of deposit is "of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment." Consequently, the certificate of deposit is an instrument under Tenn. Code Ann. § 47-9-102(a)(47), a security interest in which is perfected by possession under Tenn. Code Ann. § 47-9-313(a). JC Property having perfected its security interest by possession, its lien is not avoidable by Five Rivers.

V.

Based on the foregoing, an order will be entered contemporaneously with the filing of this memorandum opinion, denying Five Rivers' motion for summary judgment and granting the defendants' summary judgment motion. Five Rivers' motion to strike the affidavits will be granted and denied in part, as set forth in this memorandum. JC Property will be granted relief from the automatic stay in order to enforce its security interest in the certificate of deposit.

FILED: June 3, 2005

BY THE COURT

_/s/ Marcia Phillips Parsons_
MARCIA PHILLIPS PARSONS
UNITED STATES BANKRUPTCY JUDGE